IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 6, 2007

## STATE OF TENNESSEE v. JARVIS HODGES

**Direct Appeal from the Circuit Court for Madison County**
**Nos. 06-75, 06-199     Donald H. Allen, Judge**

---

**No. W2006-01234-CCA-R3-CD - Filed May 4, 2007**

---

The defendant, Jarvis Hodges, pled guilty to twelve offenses:  six counts of aggravated burglary, Class C felonies; one count of burglary and two counts of theft over $1000, Class D felonies; and two counts of theft under $500, Class A misdemeanors; and possession of a weapon, a Class C misdemeanor.  He was sentenced as a Range I, standard offender to an effective sentence of seven years in the Department of Correction.  He appeals his sentence, arguing that the trial court erred by ordering consecutive sentencing and that he should have received an alternative sentence. Following our review, we affirm the sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Gregory D. Gookin, Assistant Public Defender, for the appellant, Jarvis Hodges.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. Woodall, District Attorney General; and Alfred L. Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

The factual background set out by the State at the defendant's submission hearing showed that he committed the six aggravated burglaries and accompanying offenses over a four-day period. The first occurred on January 2, 2006, when the defendant, along with codefendant Cordarius Link, "unlawfully enter[ed] the habitation of Bill Whitman without effective consent with  intent to commit theft of property."  On January 5, 2006, he did the same at the homes of Marie Williams, Elizabeth Stockdale, and Douglas Dinwiddie.  He stole cash, credit cards, and jewelry valued at more than $1000 from Williams' home and also burglarized "an outbuilding belonging to" her.  He stole

less than $500 worth of clothes from Dinwiddie. The next day, the defendant burglarized the home of Larry Nash, taking firearms valued at more than $1000, and the home of Derek Jones, from whom he stole clothing and miscellaneous items worth more than $500. On this final day, the defendant "did unlawfully carry with intent to go armed a weapon[,] that being a pistol."

The State also explained that the defendant was found in possession of some of the stolen property and had admitted his involvement in the burglaries:

> More specifically, Your Honor, each one of these victims did report their homes burglarized and the thefts on the day they occurred. The last burglary being on January the 6th. A witness saw a vehicle leaving the scene and gave a description to law enforcement. The vehicle was subsequently stopped with the defendant being one of the occupants. Some of the property of the last burglary of Derek Jones was in the vehicle. Subsequent to that arrest, law enforcement investigators on the first burglaries and thefts of [case number] 06-75 did request an interview with the defendant and Cordarius Link, both of which gave admissions to participating in these burglaries and taking the property of these various individuals. A consent to search was obtained from Cordarius Link and that property was recovered at his place of residence. All that occurring here in Jackson, Madison County.

At the subsequent sentencing hearing, the eighteen-year-old defendant testified that he had pled guilty because he "felt it was the right thing for [him] to do." He acknowledged that he had "dropped out" of school in the tenth grade but said that he planned to find "a good job and get back in GED classes" upon his release from prison. He told investigators where they could find the stolen property, and they were able to recover "those items." He said that he was willing to pay restitution if there was damage to any of the items. He also acknowledged that, as a juvenile, he had been charged with disorderly conduct and "a couple of unruly runaway offenses" but said that was his only prior criminal history.

The defendant admitted that he had a drug problem and had been using marijuana and powder cocaine since he was fifteen years old. He used those drugs "four days out of a week" and committed the burglaries partially because of his habit, intending to spend the proceeds on drugs. On cross-examination, he acknowledged that as a part of his juvenile court proceedings he had been ordered to seek drug counseling, but he did not complete the treatment. He admitted he could not control his addiction on his own but said that with help, he was "pretty sure" he could.

In Case No. 06-75, the trial court sentenced the defendant as a Range I, standard offender to concurrent terms of three years for each of the four aggravated burglaries committed on January 2 and January 5, 2006 (Counts 1, 2, 5, and 6); two years for the burglary conviction (Count 3); two years for the theft over $1000 committed on January 5, 2006 (Count 4); eleven months and twenty-nine days for the theft under $500 conviction (Count 7); four years for the aggravated burglary committed on January 6, 2006 (Count 8); and three years for the theft over $1000 committed on January 6, 2006 (Count 9).

In Case No. 06-199, the trial court sentenced the defendant as a Range I, standard offender to concurrent terms of four years for the aggravated burglary conviction (Count 1), eleven months and twenty-nine days for the theft under $500 conviction (Count 2), and thirty days for the possession of a weapon conviction (Count 3). The trial court ordered that the four-year sentence for aggravated burglary be served consecutively to the three-year aggravated burglary sentences in Case No. 06-75, for a total effective sentence of seven years.

## ANALYSIS

On appeal, the defendant argues that "the trial court erred in imposing consecutive sentencing, when concurrent sentencing was more appropriate."

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001) (citing Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229 (Tenn. 1986)). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In the present case, the record affirmatively shows that the trial court considered the principles of sentencing and all relevant facts and circumstances. We therefore conclude that the presumption of correctness applies.

The trial court's order of consecutive sentencing was based on its finding that the defendant had an extensive record of criminal activity:

With respect to concurrent or consecutive sentences under [Tennessee Code Annotated section] 40-35-115, the Court is looking at the fact that he now stands convicted of 12 different criminal offenses, six different victims or six different aggravated burglaries have been committed along with two thefts of property over $1,000. I mean, he stands convicted of eight felony convictions by my count and also three misdemeanor convictions. So, the Court finds under Subsection B(2), the Court finds by a preponderance of the evidence that this defendant is an offender whose record of criminal activity is extensive. Again, I'm not talking about prior criminal record because he really doesn't have any prior criminal record, but, you know, I'm looking at someone who has been convicted of 12 offenses all within a period of about four days. Of course, obviously aggravated burglary is a serious problem in this judicial district. We have victims whose lives are totally destroyed as a result of burglaries being committed in their residence.

One of the circumstances in which a trial court may order consecutive sentencing is when it finds by a preponderance of the evidence that the defendant "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2) (2006). The defendant argues that the "trial court's use of the 'extensive criminal activity' factor was misplaced here, and all of the [defendant's] sentences should be run concurrently, for a total effective sentence of four (4) years." He asserts that he "had no prior record of adult criminal activity" and that consecutive sentencing cannot properly be based on the fact that the offenses were committed in a short period of time.

The defendant cites no authority in support of his view that a defendant committing a number of crimes within a four-day period, as occurred here, cannot be considered one whose record of criminal activity is extensive. If the defendant's argument were correct, it would mean that a defendant with no prior criminal record could commit a number of crimes in a period of a few days and, yet, not be eligible for consecutive sentences. We conclude that this statute was intended by the legislature to be applied to a situation such as this and not to result in a multiple offender being sentenced as one with only a single offense. See State v. Bobby Blair, No. M2002-02376-CCA-R3-CD, 2003 WL 22888924, at *3 (Tenn. Crim. App. Dec. 5, 2003), perm. to appeal denied (Tenn. May 17, 2004) ("[T]his court has held that [Tenn. Code Ann. § 40-35]-115(b)(2) applies to both the extensive nature of the defendant's present convictions and the defendant's history of criminal activity.") (citing State v. Palmer, 10 S.W.3d 638, 648-49 (Tenn. Crim. App. 1999)).

The evidence supports the trial court's finding that the defendant has a record of extensive criminal activity. Although he has no prior convictions, he committed six aggravated burglaries over a period of four days and admitted using illegal drugs on a regular basis for three years. The defendant's argument is without merit.

The defendant also argues that the "trial court erred in ordering that [he] serve his sentences in the Tennessee Department of Corrections." He contends that "[a]n alternative manner of service on this sentence would have been more appropriate. [The defendant] could have been ordered to

-4-

serve time in the local jail before being placed on probation, or [he] could have been ordered to remain incarcerated until being accepted into a long-term drug rehabilitation facility."

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is ten years or less. Tenn. Code Ann. § 40-35-303(a) (2006). Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b). The burden is on the defendant to show the denial of probation was improper. Id.; see also State v. Summers, 159 S.W.3d 586, 599–600 (Tenn. Crim. App. 2004) (citing Ashby, 823 S.W.2d at 169); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Further, Tennessee Code Annotated section 40-35-103(1) states that a sentence of confinement should be based on the following three considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2006).

In the present case, the trial court denied alternative sentencing in order to avoid depreciating the seriousness of the defendant's offenses, to protect the public, and because of his lack of potential for rehabilitation:

> Now, with respect to alternative sentencing or probation, the [c]ourt has looked at this very carefully. I've got a young man here that's 18 and a half years of age at the time he committed these offenses and he doesn't have any substantial prior criminal record. However, it does appear from looking at his statements in the presentence report and based on his testimony here today that I'm dealing with a

young man with a pretty serious drug problem. I mean, he has admitted under oath that he uses cocaine and marijuana about four times a week since he's been 15. You know, this is somebody for three and a half years or so has been using drugs on a regular basis. Even when he was referred by the juvenile court for treatment, he didn't follow through with it. He only went to a few meetings over a period of a month and then he quit going. He's not going to get over this problem under those circumstances. Now, I know there's been a request made here today for the [c]ourt to look at some type of long treatment program, but, you know, I'm just afraid when I consider the public safety, I'm just not sure that [the defendant] could make it on any type of probation or any type of alternative sentencing. I'm convinced that had he not been arrested and taken into custody on January the 6th of '06, he would have probably committed more aggravated burglaries. I feel very confident about that.

The [c]ourt finds that in order to avoid depreciating the seriousness of these 12 offenses, the [c]ourt finds that confinement is necessary in this case. Also, the [c]ourt finds that it is necessary to protect the public from the defendant's further criminal conduct. Now, I am trying to impose the least severe sentence possible. I feel like a three year sentence or a four year sentence is just not sufficient for what he has been convicted of here today. I feel like a seven year sentence is probably the least – the aggregate sentence of seven years is probably the least severe measure that the [c]ourt can take in order to protect the public from the defendant's future criminal conduct. The [c]ourt finds that he is not an appropriate candidate for alternative sentencing and again that's based upon the seriousness of these offenses and based upon the fact that he has a serious drug problem which I don't think he's over it yet. He talks like he can stop, but he can't.

The trial court's determinations were based on the defendant's poor potential for rehabilitation, the need to protect the public, and the need to avoid depreciating the seriousness of his offenses. See Tenn. Code Ann. § 40-35-103(1) (2006). Moreover, the record supports these conclusions. Other than his testimony that, with help, he was "pretty sure" he could overcome his drug addiction, the defendant did not put forth any evidence that he would stop using cocaine and marijuana on a regular basis or stop burglarizing houses to support his habit. The defendant's argument is without merit.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the sentence imposed by the trial court.

_____
ALAN E. GLENN, JUDGE